David P. Johnson (#13260)
djohnson@wnlaw.com
WORKMAN NYDEGGER
60 E. South Temple, Suite 1000
Salt Lake City, Utah 84111
Tel. 801-533-9800

Michael A. Albert (MA #558566) (pro hac vice)
malbert@wolfgreenfield.com
Ryan Van Olst (MA #698181) (pro hac vice)
rvanolst@wolfgreenfield.com
Evan C. Jones (MA #709940) (pro hac vice)
ejones@wolfgreenfield.com
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, Massachusetts 02210
Tel. 617-646-8000

Attorneys for Plaintiff and Counterclaim-Defendant
DRINK LMNT, INC.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| DRINK LMNT, INC., a Delaware corporation,<br><br>Plaintiff and Counterclaim-Defendant,<br><br>v.<br><br>ELMNT, LLC, a Utah limited liability company,<br><br>Defendant and Counterclaim-Plaintiff. | **PLAINTIFF'S MOTION TO DISMISS COUNT I OF DEFENDANT'S COUNTERCLAIM AND MEMORANDUM IN SUPPORT**<br><br>Case No. 2:26-cv-00730-DBB-PK<br><br>District Judge David B. Barlow<br>Magistrate Judge Paul Kohler |

## TABLE OF CONTENTS

RELIEF SOUGHT AND GROUNDS .......... 5
INTRODUCTION .......... 6
BACKGROUND .......... 8
LEGAL STANDARD .......... 10
A. Rule 12(b)(6) .......... 10
B. The Heightened Pleading Standard of Rule 9(b) .......... 12
C. Tortious Interference Under Utah Law .......... 12
ARGUMENT .......... 14
A. Count I Fails Because LMNT's Notice to Amazon Was a Lawful Assertion of Its Trademark Rights .......... 14
1. LMNT Was Legally Entitled to Report Its Infringement Claim to Amazon. .......... 14
2. Amazon's Terms of Use Are Not an "Established Standard of a Trade or Profession." .......... 16
3. The Counterclaim Fails to Identify Any Misrepresentation in the Notice. .......... 18
4. The Amazon Page ELMNT Cites Contradicts the Automatic-Removal Allegation. .......... 23
B. ELMNT Does Not Plausibly Allege Causation or Injury. .......... 24
C. Dismissal Should Be with Prejudice. .......... 25
CONCLUSION .......... 26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allergy Rsch. Grp. LLC v. Rez Candles Inc.*, No. 2:21-cv-73-TC-JCB, 2022 WL 1004214 (D. Utah Apr. 4, 2022) ..... 7, 15, 17, 22

*Allergy Rsch. Grp. LLC v. Rez Candles Inc.*, No. 2:21-cv-73-TC-JCB, 2022 WL 3913556 (D. Utah Aug. 31, 2022) ..... 7, 16, 22, 25

*Am. Agencies, LLC v. Sloan*, No. 2:13-cv-00283-JNP-CMR, 2020 WL 7024911 (D. Utah Nov. 30, 2020) ..... 18

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..... 10, 21, 22

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ..... 10, 24

*C.R. England v. Swift Transp. Co.*, 2019 UT 8, 437 P.3d 343 ..... 13, 14, 16, 17

*Drink LMNT, Inc. v. ELMNT, LLC*, No. 2:25-cv-01018-SPC-KRH (M.D. Fla.), Dkt. 68 (July 11, 2026) ..... 8

*Eldridge v. Johndrow*, 2015 UT 21, 345 P.3d 553 ..... 12, 13

*Foman v. Davis*, 371 U.S. 178 (1962) ..... 25

*GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381 (10th Cir. 1997) ..... 10, 21, 23

*iMerchandise LLC v. TSDC, LLC*, No. 3:20-cv-248, 2021 WL 1222197 (D. Conn. Mar. 31, 2021) ..... 15

*Jefferson Cnty. Sch. Dist. No. R-1 v. Moody's Investor's Servs., Inc.*, 175 F.3d 848 (10th Cir. 1999) ..... 25

*Khalik v. United Air Lines*, 671 F.3d 1188 (10th Cir. 2012) ..... 10

*Koch v. Koch Indus., Inc.*, 203 F.3d 1202 (10th Cir. 2000) ..... 12

*Leigh Furniture & Carpet Co. v. Isom*, 657 P.2d 293 (Utah 1982) ..... 13, 17, 18, 21, 22

*Lu v. Univ. of Utah*, No. 2:16-cv-00051, 2018 WL 1585943 (D. Utah Mar. 28, 2018), *report and recommendation adopted*, 2018 WL 3993458 (D. Utah Aug. 21, 2018), *aff'd*, 790 F. App'x 933 (10th Cir. 2019) ..... 11

*Matney v. Barrick Gold of N. Am.*, 80 F.4th 1136 (10th Cir. 2023) ..... 11

*Moxtek, Inc. v. United States Welding, Inc.*, No. 2:22-cv-00143-JNP-DAO, 2023 WL 2346316 (D. Utah Mar. 3, 2023) ..... 15, 21

*Purac Am. Inc. v. Birko Corp.*, 2015 WL 1598065 (D. Colo. Apr. 8, 2015) ..... 12

*Rich Media Club, LLC v. Mentchoukov*, No. 2:11-cv-1202-TS, 2012 WL 1119505 (D. Utah Apr. 3, 2012) ..... 10

*Sec. Sys., Inc. v. Alder Holdings, LLC*, 421 F. Supp. 3d 1186 (D. Utah 2019) ...................... 12, 18

*Sugarhouse Fin. Co. v. Anderson*, 610 P.2d 1369 (Utah 1980)................................................... 19

*Tal v. Hogan*, 453 F.3d 1244 (10th Cir. 2006) ............................................................................ 11

*Thimes Sols., Inc. v. TP Link USA Corp.*, No. 22-56176, 2024 WL 1328194 (9th Cir. Mar. 28, 2024)........................................................................................................................... 22

*Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93 (2d Cir. 2010) ......................................................... 14

*Trevari Media, LLC v. Colasse*, 758 F. Supp. 3d 1175 (C.D. Cal. 2024).................................... 21

*Walker v. Anderson-Oliver Title Ins. Agency, Inc.*, 2013 UT App 202, 309 P.3d 267................. 17

*Yazd v. Woodside Homes Corp.*, 2006 UT 47, 143 P.3d 283 ...................................................... 18

**Statutes**

15 U.S.C. § 1052(d) ..................................................................................................................... 19

15 U.S.C. § 1064(1) ..................................................................................................................... 19

15 U.S.C. § 1114(1) ..................................................................................................................... 14

15 U.S.C. § 1115(a) ..................................................................................................................... 19

15 U.S.C. § 1119.......................................................................................................................... 19

15 U.S.C. § 1125(a) ..................................................................................................................... 14

**Rules**

Fed. R. Civ. P. 8........................................................................................................................... 24

Fed. R. Civ. P. 9(b) ............................................................................................................... 11, 18

Fed. R. Civ. P. 12(b)(6)............................................................................................................ 5, 10

Fed. R. Evid. 201(b)...................................................................................................................... 11

**Other Authorities**

Restatement (Second) of Torts § 773 (1979)................................................................................ 15

Restatement (Third) of Torts: Liability for Economic Harm § 20 (2020).................................... 15

## RELIEF SOUGHT AND GROUNDS

Plaintiff and Counterclaim-Defendant Drink LMNT, Inc. ("LMNT") moves under Federal Rule of Civil Procedure 12(b)(6) to dismiss with prejudice Count I of Defendant ELMNT, LLC's ("ELMNT") Counterclaim (Dkt. 22) for tortious interference with economic relations.

Count I fails to state a claim for tortious interference because ELMNT does not plausibly allege that LMNT used "improper means," which is an element of the claim. Under Utah law, "improper means" requires conduct that is independently wrongful—a party is not liable for conduct it is legally entitled to engage in, even if such conduct affects another party's business. The conduct ELMNT challenges is LMNT's notice of infringement to Amazon.com (the "Notice") which identified ELMNT's listings as the subject of LMNT's trademark infringement claims and was submitted while LMNT's federal infringement litigation against ELMNT on the same marks was pending.

ELMNT's theories of improper means fail on the face of its pleading and the documents it incorporates: Amazon's terms of use are not an established standard of a trade or profession; ELMNT does not plausibly allege that the Notice contained a misrepresentation; and ELMNT's allegation that the Notice was submitted after dismissal of the Massachusetts action is contradicted by the documents it incorporates and, in any event, is immaterial because the Notice was accurate regardless of its submission date. ELMNT also fails to plausibly allege causation or injury.

## INTRODUCTION

ELMNT seeks to impose tort liability on LMNT for providing notice to Amazon of LMNT's trademark infringement allegations under Amazon's intellectual property reporting procedures. The Notice accurately stated LMNT's position, the basis for it, and the fact that LMNT was also proceeding on the same claims in federal court.

In short, LMNT used the Amazon notice system for precisely its intended purpose. Doing so is protected under Utah law. To state a claim for tortious interference under Utah law requires conduct that is "independently wrongful." A party that does what it is legally entitled to do has not used improper means. LMNT's submission to Amazon was just that: an assertion of its registered trademark rights through Amazon's infringement reporting process established for that purpose.

ELMNT's theory of wrongdoing also depends on a chronology that is demonstrably false. It alleges that LMNT submitted the Notice on November 7, 2025, two days ***after*** the Massachusetts action was dismissed, and thereby misled Amazon into believing the litigation remained pending. But LMNT in fact submitted the Notice on November 4, ***while the Massachusetts action was still pending***. Not until November 5—i.e., ***after*** LMNT filed its Notice—did the Massachusetts court dismiss the action (for lack of personal jurisdiction—not on the merits). Putting aside that "retaliation" is not even a legally viable basis for ELMNT's counterclaim, as discussed below, it is simply logically impossible for LMNT's Notice to have constituted "retaliation" for an event that ***had not yet occurred***.

And even if ELMNT's erroneous contention that the Notice was filed on November 7 were taken as fact, the Notice would as of that date ***still*** have been correct in asserting that LMNT had filed suit for trademark infringement, and that the suit was pending, because LMNT had refiled its infringement claims on November 6 in Florida. In short, the statement was indisputably true regardless of whether the actual Notice date (November 4) or ELMNT's alleged Notice date (November 7) is taken as correct for purposes of this motion.

ELMNT's remaining theories fare no better. Stretching to identify some "improper means," ELMNT alleges that the Notice violated Amazon's policies, which it calls an "established standard of a trade or profession." But, as this District has held, Amazon's policies are not the "established standard of a trade or profession." Nor, in any event, does ELMNT identify any professional standards that are purportedly set forth by Amazon or breached by LMNT.

Nor does ELMNT plausibly connect the Notice to any claimed damages. It does not allege when any listing was removed, how long any removal lasted, or that it lost any sales as a result of any listing being down. It merely alleges that its sales declined following November 7—while admitting that they continued to decline even after Amazon restored the listings, thus alleging no plausible basis to conclude that the brief takedown had any impact.

This District has already rejected a materially similar tortious interference theory arising from trademark enforcement efforts directed to an Amazon storefront in *Allergy Research Group v. Rez Candles* (discussed below). The same result follows here. Count I should be dismissed with prejudice.

## BACKGROUND

LMNT has sold dietary supplements under the LMNT mark since 2018 and owns federal registrations for that mark. Compl. ¶¶ 15–16, 25. In 2022, ELMNT began selling dietary supplements under the marks ELMNT, TERRA ELMNT, and ELMNT HEALTH. Compl. ¶¶ 27–30. It uses ELMNT prominently in connection with its products and Amazon storefront. Compl. ¶¶ 33–34, 64–65 & Exs. 7–8. The similarity of the marks, as used on related goods, has caused marketplace confusion.

LMNT sued ELMNT for trademark infringement in the District of Massachusetts in March 2025. Countercl. ¶ 35. On November 5, 2025, without reaching the merits, that court dismissed for lack of personal jurisdiction. *Id.* ¶ 36; Van Olst Decl., Ex. B.[1] The next day, LMNT refiled its claims in the Middle District of Florida (a state into which ELMNT undisputedly sold the accused goods). Ex. C. After that court found personal jurisdiction lacking, *Drink LMNT, Inc. v. ELMNT, LLC*, No. 2:25-cv-01018-SPC-KRH (M.D. Fla.), Dkt. 68 (July 11, 2026), LMNT refiled the action in this Court, in the state in which ELMNT is organized. Since its original filing, LMNT has sought, and continues to seek, injunctive and other relief against ELMNT's use of the challenged marks in the marketplace (including on Amazon). Compl., Prayer ¶¶ A(vii), E.

Amazon provides an IP infringement notice procedure for parties, such as LMNT, aggrieved by a seller's use of allegedly infringing marks on Amazon's e-commerce platform. On October 31, 2025, LMNT's counsel notified ELMNT's counsel of LMNT's intent to invoke this

[1] Citations to "Ex. __" are to the exhibits attached to the Declaration of Ryan Van Olst ("Van Olst Decl."), filed with this motion.

procedure. Van Olst Decl. ¶ 2. ELMNT's counsel thus became aware of LMNT's intent to file the Notice on October 31, or at the latest by November 3, 2025, the date on which he responded. *Id.*

LMNT duly submitted the Notice to Amazon on November 4, 2025. Van Olst Decl. ¶ 3; Ex. A. ***As of that date, the Massachusetts action was still pending.*** Ex. B. The Notice identified LMNT's trademark registrations and the challenged listings, explained the basis for LMNT's position that ELMNT's use was likely to cause confusion, and stated that "LMNT has filed suit for trademark infringement," identifying the Massachusetts action by docket number. Countercl. ¶¶ 45, 47; Ex. A.[2] Amazon acknowledged receipt that same day and assigned the Complaint ID # 18768151121. Ex. A.

The next day, November 5, the Massachusetts case was dismissed for lack of personal jurisdiction. Erroneously claiming that the Amazon Notice was submitted on November 7, ELMNT now alleges that it was in "retaliation" for the November 5 dismissal of the Massachusetts action. Countercl. ¶¶ 45–46, 51, 53, 59, 73. But since the Notice ***predated*** the dismissal, that is logically impossible. ELMNT also alleges that the Notice was false or misleading because there was no then-pending litigation. But there was—***regardless*** of which Notice date is taken as true: the actual Notice date (November 4), at which time the case was

---

[2] ELMNT falsely alleges that LMNT submitted "numerous" notices on November 7, 2025. Countercl. ¶ 45. LMNT submitted ***one*** Notice, under ***one*** Complaint ID, on November 4, identifying the disputed listings. Ex. A. On November 7, Amazon advised LMNT that the Notice was under review and had been forwarded to the seller (i.e., ELMNT). Ex. D. In any event, the Court need not resolve the discrepancy regarding whether there was one notice or several, because ELMNT alleges that the same communication accompanied each notice, *id.* ¶ 47, and the analysis in text below applies regardless of whether there was one notice or more than one.

pending in Massachusetts, or the November 7 date alleged by ELMNT, at which time the case was pending in Florida.

ELMNT contends that Amazon initially removed its listings, *id.* ¶¶ 52, 54–55, 57–58, 70, but shortly thereafter restored them. *Id.* ¶¶ 55, 61–64. ELMNT provides no further specific factual allegations in support of any alleged harm. It does not, for example, identify any specific lost sale, or tie any claimed loss to the period during which its listings were allegedly unavailable, nor does it allege facts supporting any causal link between the Notice and any damages. In short, it fails to plausibly allege a causal chain resulting in loss.

## LEGAL STANDARD

### A. Rule 12(b)(6)

To survive a motion under Rule 12(b)(6), a counterclaim must plead facts that, accepted as true, state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Well-pleaded factual allegations are taken as true, but not legal conclusions, labels, or formulaic recitations of the elements. *Iqbal*, 556 U.S. at 678; *Khalik v. United Air Lines*, 671 F.3d 1188, 1190–91 (10th Cir. 2012). Allegations pleaded on information and belief are entitled to no greater weight than the facts supporting them, and where no supporting facts are pleaded, they are mere conclusions. *Twombly*, 550 U.S. at 551, 564–65; *Rich Media Club, LLC v. Mentchoukov*, No. 2:11-cv-1202-TS, 2012 WL 1119505, at *3–4 (D. Utah Apr. 3, 2012).

In deciding the motion, the Court may consider documents referenced in the counterclaim that are central to the claim and whose authenticity is not reasonably disputed, including copies submitted by the moving party. *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d

1381, 1384–85 (10th Cir. 1997). If such a document contradicts an allegation in the counterclaim, the Court need not accept that allegation as true. *GFF Corp.*, 130 F.3d at 1384–85; *Matney v. Barrick Gold of N. Am.*, 80 F.4th 1136, 1151 & n.11 (10th Cir. 2023) (affirming dismissal with prejudice where documents referenced in the complaint and attached to the motion to dismiss contradicted the allegations in the complaint, since a plaintiff "cannot survive a motion to dismiss merely by pointing to allegations refuted by the documents on which those allegations are based").

ELMNT's Counterclaim quotes the Notice, rests its misrepresentation theory on it, and cites two Amazon policy pages by URL as the standards LMNT allegedly violated. Countercl. ¶¶ 30–31, 47–51. The Notice and the cited policy pages[3] are thus properly before the Court, as is Amazon's acknowledgment of the Notice (for the reasons discussed below at note 8). The Court may also take judicial notice of docket entries in the Massachusetts and Florida actions. Fed. R. Evid. 201(b); *Lu v. Univ. of Utah*, No. 2:16-cv-00051, 2018 WL 1585943, at *5 (D. Utah Mar. 28, 2018) ("In assessing whether to dismiss a case, a court may take judicial notice of filings of decisions and records in prior cases involving the same parties."), *report and recommendation adopted*, 2018 WL 3993458 (D. Utah Aug. 21, 2018), *aff'd*, 790 F. App'x 933 (10th Cir. 2019); *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006) (facts subject to judicial notice "may be considered in a Rule 12(b)(6) motion without converting the motion to dismiss into a motion for summary judgment").

[3] Exhibit E reproduces the cited pages as archived by the Internet Archive on November 17, 2025 (the Amazon Shipping terms, which state they were last updated August 6, 2025, before the Notice) and September 16, 2025 (the Seller Central page). ELMNT quotes this Seller Central page in its Counterclaim. Countercl. ¶ 31.

**B. The Heightened Pleading Standard of Rule 9(b)**

Rule 9(b) requires a party alleging a fraudulent misrepresentation to state the facts and circumstances underlying that allegation "with particularity." Fed. R. Civ. P. 9(b). The rule is not limited to claims expressly labeled as "fraud." Under Utah case law, "[w]here 'fraudulent misrepresentation is the lynchpin' of a claim for tortious interference, Rule 9(b) also applies." *Sec. Sys., Inc. v. Alder Holdings, LLC*, 421 F. Supp. 3d 1186, 1195 (D. Utah 2019) (quoting *Purac Am. Inc. v. Birko Corp.*, 2015 WL 1598065, at *6 (D. Colo. Apr. 8, 2015)). Thus, when a claim for tortious interference is "based on . . . core allegations of deception, false misrepresentations, and fraudulent conduct," it is "subject to the heightened pleading requirements of 9(b)." *Id.* at 1194–95. This heightened pleading standard, which as discussed below is applicable to ELMNT's claim that the Notice contained misrepresentations, requires that ELMNT's counterclaim "'set forth the ***time***, ***place*** and ***contents of the false representation***, the ***identity of the party making the false statements*** and ***the consequences thereof***.'" *Id.* at 1195 (quoting *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000)).

**C. Tortious Interference Under Utah Law**

Tortious interference with economic relations under Utah law has three elements: (1) intentional interference with the plaintiff's existing or potential economic relations, (2) by improper means, (3) causing injury to the plaintiff. *Eldridge v. Johndrow*, 2015 UT 21, ¶ 70, 345 P.3d 553, 565. Before *Eldridge*, a plaintiff could also plead interference by an "improper purpose." *Eldridge* eliminated that alternative, holding that an improper purpose, without improper means, is not grounds for liability. 2015 UT 21, ¶¶ 14, 70. ELMNT's allegations that LMNT acted "in retaliation," for the "sole purpose" of harassing ELMNT, or to gain settlement

leverage (Countercl. ¶¶ 46, 53, 56, 59) therefore state no element of the claim and provide no legal basis for liability even if they were true (which they are not, as shown below).

Improper means is the element that separates ordinary competitive harm from actionable interference, and it is defined narrowly. Means are improper only if they are "contrary to law, such as violations of statutes, regulations, or recognized common-law rules," or if they violate "an established standard of a trade or profession." *Leigh Furniture & Carpet Co. v. Isom*, 657 P.2d 293, 308 (Utah 1982). Examples include "violence, threats or other intimidation, deceit or misrepresentation, bribery, unfounded litigation, defamation, or disparaging falsehood." *Id.*

Improper means requires conduct that is **independently wrongful**: "[A] person is not liable for intentional interference where the person engaged only in conduct in which he or she was legally entitled to engage." *C.R. England v. Swift Transp. Co.*, 2019 UT 8, ¶ 44, 437 P.3d 343, 354. That is so **regardless of motive**. *Eldridge*, 2015 UT 21, ¶ 70 ("[I]n the absence of any improper means, an improper purpose is not grounds for tortious interference liability.").

The "established standard of a trade or profession" category is likewise confined to objective standards accepted across an industry, not the preferences or internal rules of a single market participant. *C.R. England*, 2019 UT 8, ¶¶ 46–48.

ELMNT bears the burden of pleading facts showing that LMNT's Notice to Amazon was independently wrongful under one of these categories. It has not done so.

## ARGUMENT

### A. Count I Fails Because LMNT's Notice to Amazon Was a Lawful Assertion of Its Trademark Rights.

ELMNT's improper-means theory rests on three characterizations of the Notice: that it violated an "established standard of a trade or profession" (set by Amazon's policies), that it was false or misleading, and that LMNT knew that Amazon's takedown process removes listings prior to assessing whether the Notice has merit. Countercl. ¶¶ 52, 54, 56, 68. None is adequately pleaded. The Notice was conduct LMNT was legally entitled to engage in (Part A.1); Amazon's terms of use are not an established standard of a trade or profession (Part A.2); nothing in the Notice was false or misleading (Part A.3); and the Amazon web pages that ELMNT cites do not provide that it removes listings prior to consideration of merit (Part A.4).

#### 1. LMNT Was Legally Entitled to Report Its Infringement Claim to Amazon.

The conduct ELMNT challenges is a trademark owner notifying an online marketplace of its contention that a seller's listings infringe the owner's registered marks. That is conduct the law permits. The Lanham Act gives the owner of a registered mark the right to seek termination of uses likely to cause confusion. 15 U.S.C. §§ 1114(1), 1125(a). Because a marketplace generally is not liable for infringing listings unless it knows of specific ones, the law allows the rights owner to identify those listings and report them to the marketplace. *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 107–09 (2d Cir. 2010). Amazon's own policy invites those notices, tells rights owners what to include, and describes what Amazon will do with them. Ex. E at 5–6. A rights owner who submits such a notice is using the mechanism Amazon created for exactly this purpose.

Utah law, following the Restatement, treats such conduct as privileged. A party does not use "improper means" by doing what it is legally entitled to do, even if there is an adverse effect on another's business. *C.R. England*, 2019 UT 8, ¶¶ 44–45.

Utah courts look to the Restatement as persuasive authority in this area, *id.* ¶ 18, and the Restatement states the same principle as a privilege: a party that asserts its own legal rights in good faith does not interfere improperly, even if the assertion causes a loss of business with a third party. Restatement (Second) of Torts § 773 (1979); Restatement (Third) of Torts: Liability for Economic Harm § 20 (2020); *see also Moxtek, Inc. v. United States Welding, Inc.*, No. 2:22-cv-00143-JNP-DAO, 2023 WL 2346316, at *6–8 (D. Utah Mar. 3, 2023) (dismissing interference claim based on a letter asserting that the plaintiff was not contractually free to deal with the recipient, because a good-faith assertion of a disputed legal position is not independently wrongful and is an opinion on a contested question rather than a false statement of fact); *iMerchandise LLC v. TSDC, LLC*, No. 3:20-cv-248, 2021 WL 1222197, at *4 (D. Conn. Mar. 31, 2021) (dismissing interference claims arising from an infringement complaint to Amazon, since "[n]o authority has been cited or found suggesting that engaging in otherwise lawful conduct to protect a trademark (such as submitting an infringement complaint to Amazon) may give rise to liability in tort" merely because the rights owner had been less aggressive in the past).

A court in this District reached the same result on facts materially similar to the present case. In *Allergy Research Group v. Rez Candles*, a supplement company sued an Amazon seller for trademark infringement, and the seller counterclaimed for tortious interference based on the trademark owner's requests to shut down the seller's listings on Amazon. The court dismissed

the counterclaim because the seller identified no law or trade standard that the Amazon requests violated, and pleaded nothing showing the infringement claims were baseless. *Allergy Rsch. Grp. LLC v. Rez Candles Inc.*, No. 2:21-cv-73-TC-JCB, 2022 WL 1004214, at *9, *11 (D. Utah Apr. 4, 2022). When the seller sought to replead, the court denied leave to amend with prejudice, holding that the trademark owner's complaint on its face showed a good-faith basis for protecting its marks. *Allergy Rsch. Grp. LLC v. Rez Candles Inc.*, No. 2:21-cv-73-TC-JCB, 2022 WL 3913556, at *2–3 (D. Utah Aug. 31, 2022).

As in *Allergy Rsch. Grp.*, ELMNT pleads no facts suggesting that LMNT lacked a good-faith basis for the Notice. LMNT had sued ELMNT for infringement of the same marks, on the same products, before it submitted the Notice, and that lawsuit was still pending when it submitted the Notice. Ex. A; Ex. B; Countercl. ¶ ¶ 35, 47. No court has found those claims baseless (the only dismissals being for lack of personal jurisdiction, not on the merits). As in *Allergy Rsch. Grp.*, LMNT has stated facially plausible trademark infringement claims in its Complaint. A party that has sued to stop conduct, and then asks the marketplace where that conduct occurs to stop it too, has engaged in conduct it is legally entitled to engage in, and so cannot be liable for tortious interference. *C.R. England*, 2019 UT 8, ¶ 44.

#### 2. Amazon's Terms of Use Are Not an "Established Standard of a Trade or Profession."

ELMNT's theory of improper means is that LMNT violated Amazon's policies, which ELMNT characterizes as "an established standard of trade for companies that sell primarily or exclusively through online channels." Countercl. ¶ 56. The theory fails for two reasons.

First, the standard must be one of a "trade or profession," meaning an objective norm recognized across an industry, not the internal rules of one participant in it. *C.R. England*, 2019 UT 8, ¶¶ 46–48. Amazon's terms of use are those of a private business entity, and govern only Amazon's relationship with the people who use its site. They are a contract, not the standards or norms of a profession. Indeed, Amazon reserves the right to change them at will. Ex. E at 2 (Amazon Shipping terms, § 16, reserving the right to change policies "at any time"). A unilateral contract term is not a professional standard, *C.R. England*, 2019 UT 8, ¶ 47 ("[e]stablishing an industry standard requires more than evidence of a particular company's rules and policies" (quoting *Walker v. Anderson-Oliver Title Ins. Agency, Inc.*, 2013 UT App 202, ¶ 20, 309 P.3d 267)), and ELMNT pleads no facts supporting its treatment of a marketplace's terms of use as one. Countercl. ¶ 56. A court in this District dismissed a strikingly similar theory in *Allergy Rsch. Grp.*, where an Amazon seller alleged that a trademark owner's shutdown requests to its storefront were improper means but "d[id] not identify any law or standard that [those] demands violated." 2022 WL 1004214, at *9.

Second, the specific Amazon terms ELMNT quotes are not standards of conduct at all. The first comes from the Conditions of Use for Amazon Shipping, not the Brand Registry, and as such does not even govern the Report Infringement form. Ex. E at 1 ("Welcome to Amazon Shipping"). The second is an Amazon Seller Central article explaining what intellectual property is and what should be included in an infringement report. Ex. E at 3–5. Neither prohibits anything LMNT's Notice is alleged to have done. The "Important Warning" quoted at Countercl. ¶ 30 states that false or misleading information "may result in civil and/or criminal liability." The

provision quoted at ¶ 31 states that multiple inaccurate notices "could lead to the removal of your submission privileges." Both are simply warnings about potential consequences.

**3. The Counterclaim Fails to Identify Any Misrepresentation in the Notice.**

ELMNT's theory is that the Notice was "false and misleading," Countercl. ¶ 68; *see also* ¶¶ 57, 70. Although misrepresentation can in some instances be a form of improper means, *Leigh Furniture*, 657 P.2d at 308, ELMNT does not state such a claim here: it baldly pleads that LMNT used "deceit, equivocation, misrepresentations, and disparaging falsehoods," *id.* ¶ 57, thus tracking in conclusory fashion the *Leigh Furniture* list, without providing any of the required supporting factual allegations.[4] Because the theory rests on alleged misrepresentations, the heightened pleading standard of Rule 9(b) applies. ELMNT must therefore plead the time, place, and contents of each false statement and the consequences of it, setting forth plausible allegations of material misrepresentation. *Sec. Sys.*, 421 F. Supp. 3d at 1195. Aside from identifying certain statements in the Notice, ELMNT ***pleads no facts showing that any of them was false***. As shown below, its own allegations show the opposite. And its allegation that LMNT "knew or should have known" the statements were false, Countercl. ¶¶ 54, 68, rests on a single purported fact—its erroneous allegation that the Notice was submitted on November 7—which is contradicted by the very documents referenced in the pleadings.[5]

---

[4] ELMNT repeats the words "false," "misleading," or "deception" numerous times in its Counterclaim. *See* ¶¶ 48, 50, 54, 68, 70. Nowhere, however, does it set forth concrete factual allegations that plausibly state a claim for any misrepresentation that would support the "improper means" element of a tortious interference claim.

[5] And as noted above, even if the November 7 date were correct, the statement that litigation was then pending would ***still*** have been correct because the case was by then pending in Florida.

ELMNT identifies four alleged statements or omissions in support of its theory. None states a claim for false or misleading conduct.

**The alleged omissions.** ELMNT alleges the Notice was misleading because it did not tell Amazon that ELMNT owns a registration for TERRA ELMNT or that ELMNT had enrolled that mark in Brand Registry. Countercl. ¶ 49. But an omission is not a misrepresentation except where there is a legal duty to disclose. *Am. Agencies, LLC v. Sloan*, No. 2:13-cv-00283-JNP-CMR, 2020 WL 7024911, at *8 (D. Utah Nov. 30, 2020) (in an interference claim, fraudulent nondisclosure requires "a legal duty to communicate"); *Yazd v. Woodside Homes Corp.*, 2006 UT 47, ¶ 35, 143 P.3d 283 (ranking the "legal duty to communicate" as the most important element to a claim of fraudulent concealment). ELMNT identifies none, and the source it relies on supplies none. Amazon's policy lists what a rights owner should include in a notice: identification of the rights owner's own intellectual property, the nature of the infringement, the disputed listings, the identity of the sellers, supporting documentation, and contact details. Ex. E at 5. Nothing in that list requires the rights owner to describe the accused seller's registrations or Brand Registry status. ELMNT thus states no legal basis for contending that LMNT misled Amazon by not volunteering information on Amazon's form that Amazon's form does not request.

In any event, Amazon already had that information. Brand Registry is Amazon's program. ELMNT itself alleges that Amazon administers enrollment and uses it to decide how to handle notices. Countercl. ¶¶ 21–24, 49. Whatever significance (if any) Amazon might have attached to ELMNT's enrollment in Brand Registry, Amazon already knew that and did not need LMNT to tell it. And no duty to disclose arises where the parties deal at arm's length and the

facts are reasonably within the knowledge of both. *Sugarhouse Fin. Co. v. Anderson*, 610 P.2d 1369, 1373 (Utah 1980).

Nor would inclusion of those facts have changed the substance of the Notice. ELMNT's trademark registration is no defense to LMNT's infringement claim. ELMNT's registration did not issue until July 2023, Countercl. ¶ 11, some five years after the date LMNT began using its mark, Compl. ¶¶ 15–16.[6] And the Notice ***did*** disclose the mark in question. It identified the TERRA ELMNT mark, acknowledged that ELMNT "claims to distinguish the marks by adding the word TERRA," and explained why LMNT contends that this addition does not dispel confusion. Countercl. ¶ 47. In short, ELMNT's complaint seems to amount not to any lack of disclosure but simply to the fact that LMNT did not argue ELMNT's side of the dispute. But ELMNT itself had the opportunity to do so.

**The storefront name.** ELMNT alleges the Notice "misleadingly suggested that the storefront name used by ELMNT was solely 'ELMNT' when the actual name as it appears is 'TERRA ELMNT.'" Countercl. ¶ 50. The Notice did not say "solely." It said ELMNT was "using the confusingly similar mark ELMNT in its Amazon storefront name, product titles, and packaging," which is true—the mark ELMNT was "in" the storefront name. And in the

[6] ELMNT's registration, as it is less than five years old, is also subject to cancellation on any ground that would have barred registration, including likelihood of confusion with a mark previously used by another. 15 U.S.C. §§ 1052(d), 1064(1), 1119; *see also id.* § 1115(a) (registration is only prima facie evidence and does not preclude any defense or defect that could have been asserted absent registration). Indeed, LMNT's Complaint seeks such cancellation as one of its remedies. Compl. ¶¶ 106–13.

following sentences, the Notice went on to directly address ELMNT's addition of the term TERRA. *Id.* ¶ 47. It thus expressly addressed the distinction ELMNT says was concealed.[7]

**Whether there was still active litigation.** ELMNT alleges that the statement "LMNT has filed suit for trademark infringement (No. 1:25-cv-10659-MJJ, D. Mass.)" was misleading because it implied the Massachusetts action "was still active" when, according to ELMNT, that action "had been dismissed two days prior to [LMNT's] filing of the Notice." Countercl. ¶ 51. As a threshold matter, the Notice did not state that the action "was still active." It said that LMNT "has filed suit," which was undisputedly true. But even supposing this statement implied that the action was still pending, ***that was also true***. The Notice was filed on November 4 (*see* Ex. A[8]) and the Massachusetts action was not dismissed until November 5. (*See supra* Background; Ex. B.) And even if the Court were to take at face value ELMNT's erroneous contention that the Notice was filed on November 7, the action was then pending in Florida (having been filed there on November 6). In other words, litigation was pending as of the Notice date under ***either*** assumption regarding what that date was. The Massachusetts and Florida dockets (of which this Court may take judicial notice) confirm this fact. Exs. B, C.

**"Disparaging falsehoods."** Beyond the allegations discussed above, ELMNT offers only conclusory labels. ELMNT's allegation that the Notice contained "disparaging falsehoods,"

---

[7] ELMNT ***does*** at times use "ELMNT" alone, which is a further reason why there is no basis to suggest that this statement was false. *See* Compl. ¶¶ 33–34, 64–65 & Exs. 7–8.

[8] The Court may consider Ex. A, which is Amazon's November 4 acknowledgment of receipt of the Notice, because ELMNT has placed the Notice and its date at issue in its pleadings. Amazon's acknowledgment indisputably reflects Amazon's receipt of that submission—it bears the Complaint ID Amazon used for the Notice throughout, Ex. D, and identifies the same products that ELMNT identifies in its Counterclaim. Countercl. ¶ 45. ELMNT cannot reasonably dispute its authenticity. *GFF Corp.*, 130 F.3d at 1384–85.

Countercl. ¶¶ 57, 70, identifies no such disparaging false statement. ELMNT has taken this label from the *Leigh Furniture* list of improper means, and pleaded it without any facts that would place LMNT's conduct in that category. *Iqbal*, 556 U.S. at 678. The Notice truthfully stated LMNT's legal position, which it also plausibly alleged in its complaint (and on which no court has yet ruled). A statement to a third party that one's rights are being infringed is a legal opinion on a contested question, not a representation of fact, and a party that continues to press the same position in court has not made a false statement by asserting it to a third party. *Moxtek*, 2023 WL 2346316, at *6–8 (letter asserting that the plaintiff was "not contractually free" to deal with the recipient stated a legal opinion rather than a fact, was not shown to be false where the underlying question had not been adjudicated, and was sent by a party that "continues to assert this position in defending this lawsuit"); *Trevari Media, LLC v. Colasse*, 758 F. Supp. 3d 1175, 1182–83 (C.D. Cal. 2024) (dismissing trade libel and interference claims without leave to amend based on infringement notices to online platforms because "the validity or infringement of IP only becomes a provable 'fact' when a final, unappealable decision has been rendered," and notices framed as a "good faith" belief are opinion); *see also Thimes Sols., Inc. v. TP Link USA Corp.*, No. 22-56176, 2024 WL 1328194, at *1–2 (9th Cir. Mar. 28, 2024) (complaints submitted through Amazon's "Report Infringement" form and framed as a "good faith belief" were nonactionable opinion and therefore not independently wrongful for purposes of tortious interference).

**"Meritless" and "unfounded litigation."** Lastly, ELMNT alleges that the Notice was "meritless," Countercl. ¶ 45, echoing the "unfounded litigation" entry on the list in *Leigh Furniture*, 657 P.2d at 308. But again, that label is a conclusion. ELMNT pleads no facts

showing that LMNT's infringement claims are baseless. *Iqbal*, 556 U.S. at 678. This District dismissed just such a claim with prejudice in *Allergy Rsch. Grp.*, 2022 WL 3913556, at *2–3. Under Utah law, a party cannot maintain a tortious-interference claim based on allegedly meritless or unfounded litigation absent a showing that the underlying litigation itself was objectively baseless. *Allergy Rsch. Grp.*, 2022 WL 1004214, at *10–12.

**4. The Amazon Page ELMNT Cites Contradicts the Automatic-Removal Allegation.**

ELMNT's claim relies on the allegation that Amazon "immediately remove[s]" listings on receipt of a notice and reviews the notice "only after" removal, so that LMNT "knew" the Notice would take ELMNT's products down regardless of merit. Countercl. ¶¶ 25–27, 52, 54. ELMNT cites nothing for that description of Amazon's process. The Amazon page it does cite, at ¶ 31, states the opposite:

> You will receive a confirmation message that we are reviewing your notice. We will send you a follow up message once your notice has been processed. . . . If your notice of infringement is accepted, we will remove the content you reported . . . . If your notice of infringement is rejected, we will not remove the content you reported and we will not take action on the seller.

Ex. E at 5–6. In short, the process referenced in the Amazon document incorporated into ELMNT's pleading provides for review first, ***before*** any decision on removal.[9]

A pleading that relies on a document is measured against the document, not against the pleader's characterization of it. *GFF Corp.*, 130 F.3d at 1385 ("the document controls when it is properly before the court," and a party cannot avoid a dispositive document by declining to

[9] The Amazon Shipping terms ELMNT quotes at ¶ 30 similarly indicate that, on receipt of a complaint, Amazon "***may*** take certain actions, including removing information or an item," Ex. E at 2 (§ 19) (emphasis added)—not that it will automatically do so upon receipt.

attach it). ELMNT's allegation that LMNT exploited an automatic takedown procedure is contradicted by the very policy ELMNT itself cites (which provides that review ***precedes*** any removal). To the extent ELMNT alleges that Amazon did temporarily remove certain listings (Countercl. ¶ 55), that alleges actions by Amazon on its own judgment under its own process—it does not state a claim on a theory that LMNT caused Amazon to engage in a shoot-first-ask-questions-later process.[10]

**B. ELMNT Does Not Plausibly Allege Causation or Injury.**

Even if ELMNT had adequately pleaded improper means, Count I would fail on the third element—causation. ELMNT must plead facts showing that the Notice caused it injury. Instead of doing so, it pleads a conclusion and an unsubstantiated dollar figure.

ELMNT alleges in conclusory terms that the Notice caused its sales to decline (Countercl. ¶ 61), but pleads no supporting facts. ELMNT alleges that Amazon removed its listings and "ultimately restored every product." Countercl. ¶ 55. It does not allege when any listing was removed, how many were removed, or how long any removal lasted. It does not allege the loss of a single sale while any listing was down. Those facts are within ELMNT's knowledge. What ELMNT alleges instead is that its sales declined "following" November 7 and continued to decline after reinstatement, that a "preliminary analysis" attributes more than $800,000 in lost revenue to that period, and that it has observed a "long-term negative impact" on its sales. *Id.* ¶¶ 61, 63–64. It is not clear from the pleading whether those lost sales were even

[10] Even if Amazon's stated policy was to remove listings promptly on receipt of a report, a rights owner's use of the reporting tool Amazon provides would still be conduct the rights owner is legally entitled to engage in. *See supra* Part A.1.

on Amazon's platform or on one of the other platforms ELMNT admits it sells on, such as its own website and Walmart.com. ELMNT's Answer ¶ 45 (Dkt. 22 at 8). Absent such specificity, it fails to state a claim regarding any activity on Amazon.

ELMNT alleges that the Notice was submitted "shortly before" Black Friday and Cyber Monday. Countercl. ¶¶ 62, 69, 71. The Notice was submitted on November 4, 2025. Black Friday was November 28, more than three weeks later (and Cyber Monday was nearly four weeks after the Notice). ELMNT does not allege that any listing was down for that long. It does not claim that any listing was unavailable on Black Friday or Cyber Monday, or that any sale was lost on those days. Indeed, it does not allege the loss of ***any*** particular sale(s) on ***any*** dates.

Rule 8 does not require ELMNT to prove its damages in its pleading, but it does require facts making it plausible that the challenged conduct caused the claimed harm. *Twombly*, 550 U.S. at 556–57. An alleged sales decline that ELMNT does not quantify, date, or tie to the period during which, and the platform on which, its listings were allegedly unavailable does not meet that standard.

**C. Dismissal Should Be with Prejudice.**

Dismissal with prejudice is appropriate where amendment would be futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Jefferson Cnty. Sch. Dist. No. R-1 v. Moody's Investor's Servs., Inc.*, 175 F.3d 848, 859 (10th Cir. 1999). The principal defect in Count I, the absence of improper means, is legal. The conduct ELMNT challenges does not constitute improper means, and any added factual detail would not change that. Its theories of Amazon policy violation, misrepresentation, and exploitation of an alleged automatic takedown process, like its retaliation allegation, all arise from the same Notice and the same underlying documents. As in *Allergy*

*Rsch. Grp.*, where the court denied leave to amend, amendment here would be futile. 2022 WL 3913556, at *3. Count I should accordingly be dismissed with prejudice.

## CONCLUSION

ELMNT seeks to convert LMNT's enforcement of its asserted trademark rights into a tort because LMNT made use of the IP rights notification process that Amazon provides for that very purpose. Utah law requires far more than that to state a claim for tortious interference. ELMNT must plausibly allege independently wrongful means, not merely conduct that affected its business. It has not done so.

Moreover, the documents underlying ELMNT's claim show that LMNT submitted the Notice while its infringement litigation was pending. ELMNT's allegation to the contrary would fail to state a claim even if true; but in any event it is not true, as the relevant court dockets indisputably show.

Lastly, ELMNT does not plausibly connect the Notice to any losses.

Count I of the Counterclaim should therefore be dismissed with prejudice.

DATED: October 21, 2026.

Respectfully submitted,

/s/ Ryan Van Olst

Michael A. Albert (MA #558566) (pro hac vice)
Ryan Van Olst (MA #698181) (pro hac vice)
Evan C. Jones (MA #709940) (pro hac vice)
WOLF, GREENFIELD & SACKS, P.C.

David P. Johnson (#13260)
djohnson@wnlaw.com
WORKMAN NYDEGGER

Counsel for Plaintiff and Counterclaim-
Defendant
Drink LMNT, Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that on October 21, 2026, I caused the foregoing PLAINTIFF'S MOTION TO DISMISS COUNT I OF DEFENDANT'S COUNTERCLAIM AND MEMORANDUM IN SUPPORT, together with the Declaration of Ryan Van Olst and exhibits thereto, to be filed electronically with the Clerk of the Court through the CM/ECF system, which will send notice of electronic filing to all counsel of record.

/s/ Ryan Van Olst
Ryan Van Olst